No. 18,193.

CHESTER V. STULL, ET AL. *v.* DISTRICT COURT
OF PUEBLO COUNTY, ET· AL.
(308 P. [2d] 1006)

Decided March 18, 1957.    Rehearing denied April 15, 1957.

Messrs. LATTIMER, CRADDOCK & ROBB, for petitioners.

Messrs. PETERSEN & EVENSEN, for respondents.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an original proceeding in the nature of prohibition.

The Rocky Mountain Bank Note Company, a Colorado Corporation, brought suit against Betty Keator and Chester B. Stull, alleging "That said defendants, and each of them, are indebted to plaintiff company, in an unknown amount in excess of Forty-Four Hundred ($4,400.00) Dollars representing moneys and funds fraudulently procured from plaintiff."

Plaintiff below will be referred to herein as plaintiff and the defendants Keator and Stull will be referred to by name where necessary; Warren W. Lattimer, Alfred Z. Craddock, and Richard D. Robb, attorneys for Stull, will be referred to as Stull's attorneys; the District Court of the County of Pueblo in the 10th Judicial District and the Honorable John H. Marsalis, one of the Judges thereof, will be referred to as the Court.

In aid of its complaint plaintiff filed an affidavit in attachment against Keator and Stull. It also filed an undertaking in attachment *securing Keator and Stull* against all damages which *they* might sustain by reason of the wrongful suing out of the attachment in a sum not exceeding $8800.00. Writ of attachment was issued thereon under date of August 10, 1956. Thereafter, on a

date not disclosed by the record, plaintiff petitioned the district court for a restraining order which was granted on January 17, 1957. This petition set forth the issuing of the writ of attachment and further stated that Stull, or his attorneys, or The Eagle Corporation, a Colorado Corporation, or some or all of them, " * * * has in his, its or their possession, certain stock certificates for an unknown number of shares of The Eagle Corporation standing in the name of the defendant, Chester V. Stull." It then alleged that unless restrained by order of Court that one or more of these parties may transfer, sell, assign, convert or otherwise dispose of said stock certificates, or some part of them, and thus place said certificates and the rights of the defendant Stull, represented thereby, beyond the reach and control of plaintiff in its attempt to satisfy any judgment that might be rendered against Stull.

The petition then stated that plaintiff has a good and meritorious claim against Stull and is authorized to attach said certificates or enjoin the transfer, sale, assignment or other disposition of the same by virtue of the provisions of '53 C.R.S, 31-9-13, *and the* "Colorado Rules of Civil Procedure." It then requested that an order be entered *ex parte* restraining and enjoining Stull, his attorneys, and The Eagle Corporation, and each of them and their agents, from selling, assigning, transferring, encumbering, converting or otherwise disposing of any and all certificates of stock of The Eagle Corporation standing in the name of Stull, which they or any of them may have in their possession or control, until further order of court.

The pleadings show that neither plaintiff nor the court complied with the requirements of Rule 65, R.C.P., in the application for, or the granting of, such restraining order.

Stull and his attorneys filed a petition in this court for a writ in the nature of prohibition and a rule upon the trial court to show cause why the restraining order

theretofore entered by it should not be dissolved because it was not issued as provided by rule 65 (b), R.C.P. A rule to show cause was issued pursuant to the prayer of the petition and the matter is now at issue.

*FIRST QUESTION TO BE DETERMINED:*

*Can a plaintiff who has sued out a writ of attachment upon personal property before judgment secure an injunction under '53 C.R.S., 31-9-13, without complying with Rule 65, R.C.P.?*

This question is answered in the negative. '53 C.R.S., 31-9-13, provides:

*"Creditor may reach certificate of debtor.*—A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed *at law or in equity,* in regard to property which cannot readily be attached or levied upon by the ordinary legal process." (Emphasis added.)

Rule 102, R.C.P., provides for attachments but has no wording therein helpful to the issues here.

Rule 65, R.C.P., relating to injunctions states in part:

"(b) Temporary Restraining Order; Notice; Hearing; Duration. No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint or by testimony that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry not to exceed 10 days, as the court fixes, unless within the time so fixed, the order, for good cause shown, is extended for a like

period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and take precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

"(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by *any party* who is found to have been wrongfully enjoined or restrained." (Emphasis added.) * * *

"(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

* * *

"(g) When Relief Granted. Relief under this rule may also be granted on the motion of any party at any time after an action is commenced and before or in connection with final judgment."

Rule 1 (a), R.C.P., provides that our rules apply to *all civil actions whether cognizable at law or in equity and to all special statutory proceedings except as stated in Rule 81, R.C.P.*

The applicable part of Rule 81 states:

"(a) Special Statutory Proceedings. These rules do not govern procedure and practice in any special statutory proceeding *insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute.* Where the applicable statute provides for procedure under a former Code of Civil Procedure, such procedure shall be in accordance with these rules." (Emphasis added.)

Clearly '53 C.R.S., 31-9-13, though adopted as an aid to creditors in reaching corporate stock owned by a debtor, and authorizing the courts to aid in securing such assets by injunction or otherwise, is subject to Rule 65, R.C.P., there being no special requirements or procedure provided therein by which an injunction or other relief shall be granted. This is the only logical construction of the statute and rules and is peculiarly applicable to the situation involved here.

Neither the attorneys in question nor The Eagle Corporation were parties to the original action in the court below. The undertaking in attachment is solely for the attachment proceedings and is for the benefit of Stull and Keator and cannot be said to protect Stull's attorneys or The Eagle Corporation, who are not named as obligees therein and who are not parties to that action. If plaintiffs are unsuccessful in their original action and injury results to Stull's attorneys or The Eagle Corporation from the issuance of the restraining order, they have no recourse under the attachment bond. If plaintiff desires to proceed by injunctive process *as well as* by

writ of attachment, as it may under this statute, it must nevertheless furnish bond for the protection of those against whom the injunctive order is to operate as well as comply with the *many* other requirements of Rule 65.

SECOND QUESTION TO BE DETERMINED:

*Does relief in the nature of prohibition lie under the facts herein presented?*

This question is answered in the affirmative.

■ Rule 106, R.C.P., provides for the issuance of writs in the nature of prohibition as well as other types of relief not here involved. Subsection (4) thereof provides for appropriate action "Where an inferior tribunal * * * has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy." * * * "Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion."

Plaintiff contends that the last sentence of Rule 116, R.C.P., bars this action; the rule states: "The fact that a court has erroneously granted or denied change of venue, or is otherwise proceeding without or in excess of jurisdiction, will not be regarded as sufficient" to grant relief in the nature of prohibition.

It appears clear to us that a trial court could not bind Stull's attorneys and The Eagle Corporation under these facts unless it had or gained jurisdiction of them in a proper manner. To hold otherwise would deny them their constitutional rights. That court by granting a restraining order *ex parte,* and without complying with all the requirements of Rule 65, issued an order without validity and without force and effect. *Valas v. District Court,* 130 Colo. 21, 273 P. (2d) 1017, cited by plaintiff, is different on its facts and is not applicable here, for we can conceive of the situation where this order could result in irreparable injury to Stull's attorneys or to The Eagle Corporation or where no adequate remedy would lie by way of writ of error or by defending contempt proceedings if the order is disregarded. For example, if

stock certificates held as alleged were in fact not the property of Stull and were merely being held for some purpose making their transfer to others essential. In such event a pending sale might be ruined or a contract breached — yet no opportunity has been granted the affected persons to be heard, and, the party liable for this injunctive order might have left the state or be unable to respond in damages.

In *Shore v. District Court* (1953), 127 Colo. 487, 258 P. (2d) 485, which contains a good discussion of Colorado cases on relief in the nature of prohibition, Mr. Justice Moore speaking for the court quotes an earlier Colorado case saying:

"Prohibition is a discretionary writ with us and is not granted, *unless in connection with other matters,* an inferior court has no jurisdiction to act." (Emphasis added.)

*Bender v. District Court,* 133 Colo. 12, 291 P. (2d) 685, is a recent case where the late Mr. Justice Clark discussed the rule and stated the circumstances under which this court will exercise its discretion in granting prohibition.

It appears that there are two requirements in construing the quoted last sentence of Rule 116, R.C.P., to-wit:

(1) That each case is determined by its own circumstances and conditions; and

(2) That coupled with the claim of lack of jurisdiction or proceedings in excess thereof, must be at least one other factor spelled out elsewhere in our rules or decisions, such as that it is a matter of great public importance, or that no plain, speedy or adequate remedy exists, or that relief by way of writ of error will be futile.

Plaintiff recognizes the constitutional and inherent powers of this court in its brief in support of its answer here for it admits "The granting or denying of the relief

requested is in the sound discretion of this Honorable Court."

Do these aggrieved parties then come within the rule of construction as outlined above? Clearly they do. Our decision on the first question presented showed that here the inferior tribunal has exceeded its jurisdiction in not complying with Rule 65, R.C.P. There is no plain, speedy or adequate remedy available to petitioners except that herein sought. The petition filed in this court set forth the necessary facts and circumstances calling for the exercise of our discretion, and we consider it a matter of "great public importance" when an inferior court has issued injunctive orders without complying with the provisions of Rule 65. Mr. Justice Holland in *Kellner v. District Court* (1953), 127 Colo. 320, 256 P. (2d) 887, said that a case in which a court is proceeding without jurisdiction of the persons or subject matter also involves a matter of great public importance.

Thus construing our rules and the cases we have referred to, we determine that the facts here involved present matters of sufficient public importance to call for the intervention of this court to prevent a manifest injustice.

The Rule is made absolute.